**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION**

IN RE

ROBERT ARNOLD WHITE and                                                CASE NO. 14-61222
GRACE ELAINE WHITE                                                            CHAPTER 7

DEBTORS

PHI AIR MEDICAL, LLC                                                              PLAINTIFF

V.                                                                                     ADV. NO. 15-6036

JAMES R. WESTENHOEFER, Chapter 7                                        DEFENDANT
Trustee

**MEMORANDUM OPINION**

This declaratory judgment action to determine whether certain prepetition health insurance proceeds are property of the Debtors' estate is before the Court on the renewed cross-motions for summary judgment and supporting papers of the Plaintiff, PHI Air Medical, LLC [ECF Nos. 44 and 52], and the Defendant, Chapter 7 Trustee James R. Westenhoefer [ECF Nos. 50 and 51]. The parties previously filed similar motions [ECF Nos. 15 and 20], which were denied because genuine issues of material fact precluded summary judgment in favor of either side [ECF No. 31]. The issue is whether health insurance proceeds paid to Debtor Robert White in satisfaction of PHI's claim for air ambulance services were validly assigned to PHI prior to the filing of the Debtors' bankruptcy petition, thereby excluding them from the bankruptcy estate.  The Defendant Chapter 7 Trustee is entitled to summary judgment because PHI has failed to produce evidence to prove Mr. White or his agent assigned the insurance proceeds.

**I.      FACTUAL BACKGROUND**

The parties generally agree regarding the underlying facts and have filed Joint Stipulations

of Fact [ECF No. 43] and Joint Exhibits [ECF No. 42]. The facts set forth below are taken from the stipulated record.

On April 25, 2014, Debtor Robert White suffered a stroke and was transported via ambulance to Saint Joseph London Hospital in London, Kentucky. At the request of emergency medical personnel, Mr. White was flown by a PHI air ambulance to the University of Tennessee Medical Center in Knoxville, Tennessee, for specialized neurologic care. At the time of the flight, Jessie Lynn Baker, a PHI crew member and nurse, executed the Patient Consent, Disclosure, and Assignment of Benefits (the "PCDAB") [ECF No. 42-1 at 4]. The PCDAB contains an assignment of Mr. White's health insurance benefits to PHI. The PCDAB was also signed by Stephanie Harns, a healthcare worker at the University of Tennessee Medical Center. Neither Mr. White nor his wife, Grace E. White, signed the PCDAB.

Once Mr. White's condition stabilized, he was transferred to Cardinal Hill Rehabilitation Hospital in Lexington, Kentucky. On May, 12, 2014, while Mr. White was at Cardinal Hill, Mrs. White executed the Designation of PHI Air Medical/Air Evac as Authorized Representative for Purposes of Pursing [*sic*] Benefit Claims and/or Appeals of Adverse Determinations (the "Designation"). [ECF No. 42-1 at 8] The Designation named PHI as Mr. White's authorized representative, allowing the company "to act on [his] behalf for the purpose of obtaining payment from [his] insurer for the services rendered to [him]." [*Id.*] Mrs. White signed the Designation with the following notation after her signature: "on behalf of Robert White. Unable to sign due to stroke 04/25/14." [*Id.*] Mrs. White crossed out and initialed two paragraphs of the Designation that discussed patient liability for any excess balance, acknowledging that she did so in an effort to avoid responsibility for any balance not covered by her husband's insurer. [*See*

2

ECF Nos. 42-4 at 16; 43 at 3.]   Mrs. White denied discussing the Designation or its specific terms with Mr. White prior to executing the document.   [ECF No. 42-4 at 45-46.]   Further, counsel for PHI acknowledged Mr. White was not in a condition that would allow him to have executed the Designation on May 12, 2014.

On May 1, 2014, PHI filed a claim with Mr. White's insurer, Blue Cross Blue Shield Federal Employee Program ("BCBS"), seeking reimbursement for its services in the amount of $44,781.00.   [ECF No. 42-1 at 6.]   BCBS issued a check to Mr. White in satisfaction of PHI's claim in the amount of $44,631.00 (the "Proceeds").[1]

According to a PHI call log, BCBS issued the Proceeds check on June 11, 2014, and the check was cashed on July 18, 2014.   [*See* ECF No. 42-6 at 2.]   Mr. and Mrs. White, or their bankruptcy attorney, retained the Proceeds until the Debtors' chapter 7 bankruptcy petition on October 13, 2014, despite multiple requests to deliver the funds.   [*See* ECF Nos. 42-2 at 30-31; 42-4 at 17.]   The funds were then turned over to the Chapter 7 Trustee.

The parties stipulated, consistent with the Whites' deposition testimony, that "[b]efore and after Mr. White's stroke, Mrs. White was responsible for dealing with household bills, and she had Mr. White's permission to do so."   [ECF No. 43 at 3; *see also* ECF No. 42-2 at 23-24.]   Mrs. White acknowledged that Mr. White never executed a power of attorney, advanced healthcare directive, or other formal document that would empower her to make healthcare decisions for him. [ECF No. 42-4 at 43-44.]   Nevertheless, at his July 18, 2016 deposition, Mr. White endorsed his wife's execution of the Designation, testifying:

---

[1] The Proceeds amount was the original claim amount less Mr. White's $150.00 policy deductible.   The parties agreed during oral argument that the Proceeds were issued to Mr. White, rather than to PHI directly, because PHI was an out-of-network healthcare provider under the BCBS plan.   This meant BCBS had no right to adjust the claim amount.   It also meant BCBS would not issue a check directly to the provider.

3

> Q: Okay. So do you recognize the signature?
>
> A: Yes.
>
> Q: And is that your wife's signature?
>
> A: Yes, it is.
>
> Q: And she wrote, "On behalf of Robert White, unable to sign due to stroke," and then the date you had your stroke; right?
>
> A: Yes.
>
> Q: Did she have your permission to sign that for you?
>
> A: Yeah.

[ECF No. 42-2 at 26.]   Further, Mr. White described his wife as "the one person that I would have trusted to sign."   [*Id.* at 28.]

## II.   JURISDICTION.

This declaratory judgment action to determine whether the Proceeds are property of the Debtors' bankruptcy estate is a core proceeding under 28 U.S.C. § 157(b)(2).   The Court has jurisdiction of core proceedings pursuant to 28 U.S.C. §§ 157(a) and 1334, and Joint Local Rule 83.12 of the United States District Courts for the Eastern and Western Districts of Kentucky.   Venue is proper pursuant to 28 U.S.C. § 1409.

## III   ANALYSIS

### A. The Summary Judgment Standard.

Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law."   *See* FED. R. BANKR. P. 7056 (incorporating by reference FED. R. CIV. P. 56).   The movant bears the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion.   *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87,

106 S. Ct. 1348, 89 L.Ed.2d 538 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists when there is sufficient "evidence on which the [factfinder] could reasonably find for the plaintiff." *Id.* at 252.

"[T]he standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). In such circumstances, "summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (quoting *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed. Cir. 1987) (citations omitted)). Still, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Poss v. Morris (In re Morris)*, 260 F.3d 654, 665 (6th Cir. 2001) (quoting bankruptcy court decision below with approval).

### B. PHI Has Failed to Produce Evidence that Mr. White Assigned the Proceeds Prior to the Petition Date.

Health insurance proceeds validly assigned to a third-party healthcare provider prior to the petition date are excluded from the bankruptcy estate. *See In re Napoleon*, 551 B.R. 200, 204 (Bankr. E.D.N.C. 2016) ("[T]here is ample precedent to the effect that when a purchaser of an insurance policy assigns its proceeds elsewhere, the assignee or beneficiary owns the proceeds, and the bankrupt's estate does not." (internal quotation omitted)); *see also PHI Air Med., L.L.C. v.*

5

*Brasher (In re Brasher)*, Case No. 15-40177, Adv. No. 15-04015, No. 18, at *7-*8 (Bankr. W.D. Ky. Feb. 1, 2016) (concluding under Kentucky law and 11 U.S.C. § 541, "The Proceeds were assigned to PHI prior to the filing of bankruptcy, divesting the [Debtor] Defendants of any interest in them.") [ECF No. 42-1 as 12-19]. The Trustee concedes this general point, but argues there was no effective assignment in this case under traditional agency principles.

Thus, the only question is whether the Proceeds held by the Debtors were actually assigned to PHI prior to the filing of their bankruptcy petition. PHI acknowledged that it was not aware of, and did not make, any claim that assignment occurred prepetition based on equitable or other legal principles regarding provision of emergency services. PHI has advanced alternate claims to prove it was assigned the Proceeds, relying on either Mrs. White's execution of the Designation or Mr. White's alleged ratification of a prior unauthorized assignment. Neither argument succeeds.

**1. There is No Evidence to Support PHI's Claim that Mrs. White Had Authority to Execute the Designation on Behalf of Her Husband.**

Kentucky law defines "agency" as "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 50 (Ky. 2003) (quoting *CSX Transportation, Inc. v. First National Bank of Grayson,* 14 S.W.3d 563, 566 (Ky. Ct. App. 1999)). Mrs. White conceded in her deposition that her husband has never conferred any formal authority to act on his behalf, whether in the form of a power of attorney, advanced healthcare directive, or other legal document. There is also nothing in the record proving that Mr. White granted Mrs. White such authority in even an informal manner before Mrs. White's execution of the Designation.

PHI relies on Mr. White's deposition testimony to argue that an agency relationship existed

6

between the couple. Mr. White's testimony is that he trusted his wife to act on his behalf and she regularly handled the household finances. That is not enough to confer authority in substantive legal matters.

Mrs. White was not empowered to act as Mr. White's agent merely because she was generally responsible for dealing with household bills and finances. The Kentucky Court of Appeals recently rejected this argument:

> The appellants argue that Mrs. Higgins was authorized to enter into the agreement as the actual and implied agent of Mr. Higgins. Mrs. Higgins testified that she was authorized to act in place of her husband because she had always handled bills and checks for him. She stated that she had always signed important papers for him with his consent. However, the *Brown* court emphasized that agency is created by the principal—not by the agent. It must be the *principal* who "holds out to others that the agent possesses certain authority that may or may not have been actually granted to the agent." The declarations of the agent are not proof of agency. Indeed, "[i]t is to the Appellants' peril that they accepted the ill-advised legal effect of the assertions of third parties, here Brown."

*Diversicare Healthcare Servs, Inc. v. Higgins*, 2014-CA-000601-MR, 2015 WL 509633, at *2 (Ky. App. Feb. 6, 2015), *review denied* (Dec. 10, 2015) (internal citation omitted).

Further, "[I]t is hornbook law that a spouse does not—by virtue of that status alone—possess actual authority to legally bind his or her spouse, and the record is devoid of any indication that [the wife] had either executed a power of attorney or, through her conduct with the defendants, created an appearance of authority in her husband." *Lattanzio v. Ackerman*, 682 F. Supp. 2d 781, 787 n.2 (E.D. Ky. 2010) (citing *Bennett v. Mack's Supermarkets, Inc.*, 602 S.W.2d 143, 147 (Ky. 1979) ("There is no longer in this state a presumption of agency between husband and wife in dealing with each other's property.").).

PHI has failed to identify any evidence that Mr. White granted Mrs. White express authority to act as his agent or that she was empowered to do so as his spouse. Further, the

authority that Mrs. White did possess—as a manager of the household's finances—does not support a finding that she could dispose of the Proceeds of Mr. White's insurance policy without his knowledge.

This is true even recognizing PHI submitted, and BCBS paid, the claim. This action might suggest BCBS accepted PHI's position as "authorized representative" under the Designation. But BCBS was not a named party in the case, and there is nothing in the record that addresses the basis for the way BCBS handled the claim. The record also does not include any information regarding the Debtors' health insurance policy provisions that might address consent to treatment and assignment of benefits. It is possible BCBS made a mistake or other reasons justified payment on the claim. Therefore, PHI has failed to provide sufficient information to allow a conclusion that the actions of BCBS have relevance to this decision.

PHI asserts, and the Trustee denies, that the language of the Designation is sufficient to function as an assignment of the Proceeds under Kentucky law. The language seems to assign the right to collect to PHI, but it is unnecessary to address this secondary issue because Mrs. White lacked the authority to bind her husband.

**2. Mr. White Did Not Timely Ratify the Assignment of the Proceeds to PHI.**

PHI also argues Mr. White ratified the execution of the Designation through the testimony at his deposition in this adversary proceeding. A principal may ratify unauthorized acts by an agent after the fact in Kentucky. *See, e.g., Short v. Metz Co.*, 165 Ky. 319, 176 S.W. 1144, 1148 (1915). The doctrine of ratification is explained as follows:

> It is a well-established rule of law that if one, not assuming to act for himself, does an act for or in the name of another upon an assumption of authority to act as the agent of the latter even though without any precedent authority whatever, if the person in whose name the act was performed subsequently ratifies or adopts what has been so done, the ratification relates back and supplies original authority to do

8

> the act. In such cases, the principal, whether a corporation or an individual, is bound to the same extent as if the act had been done in the first instance by his previous authority; this is true whether the act is detrimental to the principal or to his advantage, wither it sounds in contract or tor, or whether the ratification is express or implied.

*Capurso v. Johnson*, 248 S.W. 2d 908, 910 (Ky. 1952) (quoting 2 Am. Jur. Agency, sec. 209, page 166).  *See also Kindred Nursing Ctrs. Ltd. P'ship v. Leffew*, 398 S.W.3d 463, 467-68 (Ky. App. 2013) (quoting same)).

"The ratification of an unauthorized act may be express or it may be implied from the acts and conduct of the principal."  *Gillihan v. Morguelan*, 299 Ky. 671, 186 S.W.2d 807, 809 (1945). But the party claiming ratification must prove a principal's intention to ratify the prior actions of an agent, *see, e.g., Short*, 176 S.W. at 1148, and "ratification cannot be inferred from acts which may be readily explained without involving any intention to ratify," *Wolford v. Scott Nickels Bus Co.*, 257 S.W.2d 594, 596 (Ky. 1953).

PHI failed to identify any prepetition acts or statements by Mr. White that could act as a ratification of the execution of the Designation by Mrs. White.  Further, the Debtors' refusal to surrender the Proceeds to PHI from July 2014 until the October 13, 2014 petition date further undermines any claim that Mr. White intended to ratify the assignment of the Proceeds to PHI prepetition.

PHI instead argues ratification occurred through the testimony of Mr. White during his deposition for this adversary proceeding in July 2016, almost two years after the petition date. Allowing a debtor to ratify an agent's prepetition actions to alienate property after the filing of a petition, thereby excluding it from the bankruptcy estate, would fundamentally alter the concept of property of the estate.  *See* 11 U.S.C. § 541 (which includes in the estate "all legal or equitable interests of the debtor in property as of the commencement of the case").

PHI previously asserted that it could rely on the assignment in the PCDAB, but agreed at oral argument for these summary judgment motions that it abandoned that argument. PHI also maintained that the Designation functions as a ratification of the assignment contained in the PCDAB. That argument cannot succeed because Mrs. White lacked authority to execute the Designation for Mr. White.

### III    CONCLUSION

For the foregoing reasons, the motion for summary judgment filed by the Defendant Chapter 7 Trustee James R. Westenhoefer [ECF No. 50] is GRANTED. The cross-motion for summary judgment [ECF No. 44] by Plaintiff PHI Air Medical, LLC is DENIED. A separate order will follow.

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Friday, November 11, 2016**
(grs)